UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE PROTECT OUR COMMUNITIES FOUNDATION, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>DR. STEVEN CHU, *et al.*,<br><br>　　　　　Defendants. | Civil No. 12cv3062 L (BGS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [DOC. 10]** |

　　　Plaintiffs bring this action seeking injunctive and declaratory relief against Defendants for violation of multiple environmental statutes in connection with the issuance of a Presidential permit for a cross-border electric transmission line.  Defendants move to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1]  Plaintiffs oppose.

　　　The Court found this matter suitable for determination on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d)(1). [Doc. 12.]  For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss.

---

[1] Intervenor-defendant Energia Sierra Juarez U.S. Transmission, LLC ("ESJ") has filed a notice of joinder in the Federal Defendants' motion to dismiss.

## I.   BACKGROUND

Executive Order 10485, as amended by Executive Order 12038, requires anyone "proposing to construct, operate, maintain, or connect an electricity transmission facility at the U.S. border" to obtain a Presidential permit issued by the U.S. Department of Energy ("DOE") (*Compl.* [Doc. 1] ¶ 27; Exec. Order No. 10,485, 18 Fed. Reg. 5397 (1953), *as amended by* Exec. Order No. 12,038, 43 Fed. Reg. 4957 (1978)). Before issuing such a permit, DOE must determine the permit is in the public interest as well as consult with and obtain recommendations from the U.S. Departments of State and Defense. (*Id.*)

On December 18, 2007, Energia Sierra Juarez U.S. Transmission, LLC., ("ESJ") applied to the DOE for a Presidential permit "to construct, operate, maintain, and connect a transmission line across the U.S.-Mexico Border" ("Project"). (*Compl.* ¶ 28.)  Plaintiffs allege that the Project's "sole purpose" is to enable the construction and operation of a separate proposed wind energy project in Baja California, Mexico ("ESJ Wind Project"). (*Id.* ¶ 25.)  Specifically, the Project will connect the ESJ Wind Project with the U.S. electricity grid by means of San Diego Gas & Electric's existing Southwest Powerlink transmission line, a proposed ECO Substation, and an expanded Boulevard Station in Jacumba, California.  (*Id.* ¶¶ 1, 26.)  The Project will entail erecting up to five 150-foot tall lattice towers to support more than half a mile of transmission lines and will require extensive construction and permanent clearance of vegetation in a largely unobstructed area.  (*Compl.* ¶¶ 23-24.)  Plaintiffs also allege that the ESJ Wind Project, located in Baja California, Mexico, entails erecting more towers, including "some" that will be located less than one mile from the U.S. border.  (*Id.* ¶ 24.)  Furthermore, the ESJ Wind Project will require multiples phases of construction and about thirty percent of the total towers erected will be lighted.  (*Id.*)  Plaintiffs allege that connecting the energy from the ESJ Wind Project to the U.S. electricity grid mandates additional construction in the form of the Eco Substation project.  (*Id.* ¶ 26.)

After receiving ESJ's application, DOE completed an informal consultation with the U.S. Fish and Wildlife Service ("FWS").  (*Compl.* ¶ 26.)  Then, despite initially deciding to conduct an environmental assessment ("EA"), DOE elected to prepare an environmental impact

statement ("EIS"). (Compl. ¶ 29.) Plaintiffs allege DOE decided to do so in response to public comments. (*Id*.) In September 2010, DOE completed a draft EIS ("DEIS") and subsequently conducted public hearings and considered comments on the DEIS until the end of the comment period in September 2011. (*Id*.) In May 2012, DOE published its Final EIS ("FEIS"). (*Id*.) Plaintiffs allege they submitted comments on both the DEIS and the FEIS. (*Id*.)

Plaintiffs claim the FEIS identifies multiple "unavoidable impacts to biological resources, visual resources, cultural resources, noise, public health and safety, fire management, water sources, transportation and traffic, land use, and recreation." (*Compl*. ¶ 30.) However, on August 17, 2012, DOE announced its decision to issue Presidential Permit Number PP-334 ("Permit") to ESJ. (*Id.*) On August 31, 2012, DOE issued the Permit to ESJ. (*Id.*)

Plaintiffs allege Defendants' grant of the Permit and associated environmental reviews violated (1) the National Environmental Policy Act ("NEPA"), (2) the Endangered Species Act ("ESA"), (3) the Migratory Bird Treaty Act ("MBTA"), (4) the Bald Eagle and Golden Eagle Protection Act ("Eagle Act"), (5) the Administrative Procedure Act ("APA"), and regulations promulgated thereunder. (*Compl*. ¶ 2, 31.) For these alleged violations, Plaintiffs seek preliminary injunctive relief restraining action taken in accordance with the Project pending a full hearing on the merits, declarations that Defendants violated the aforementioned acts, and permanent injunctive relief overturning DOE's Project approval pending compliance with the aforementioned Acts. (*Id.* ¶ 7.)

II.   LEGAL STANDARD

    **A.   Proper Standard to Apply**

Although Defendants challenge this Court's jurisdiction under Rule 12(b)(1), the more appropriate procedural vehicle is Rule 12(b)(6). Plaintiffs allege violations of multiple federal statutes, all of which raise federal questions covered by 28 U.S.C. § 1331.[2] The gravamen of Defendants' position is not that Plaintiffs do not present federal claims, but instead whether

---

   [2] This statute confers on federal district courts original subject matter jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States."

those claims are enforceable against the DOE when it is acting on behalf of the President pursuant to Executive Order 10,485.  Whether there is a cause of action is not a jurisdictional question; rather, "the court must assume jurisdiction before deciding whether a cause of action exists." *Natural Resources Defense Counsel, Inc ("NRDC"). v. U.S. Dept. of State*, 658 F. Supp. 105, 108 (D. D. C. 2009) (citations omitted).  Accordingly, the Court will treat Defendant's motion as one for dismissal under Rule 12(b)(6) for failure to state a claim.

### B.      Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The court must accept all allegations of material fact as true and construe them in light most favorable to the nonmoving party.  *Cedars-Sanai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007).  Material allegations, even if doubtful in fact, are assumed to be true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  However, the court need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotation marks omitted).  In fact, the court does not need to accept any legal conclusions as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).  Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  *Id.*  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, documents specifically identified in the complaint whose authenticity is not questioned by parties may also be considered. *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superceded by statutes on other grounds). Moreover, the court may consider the full text of those documents, even when the complaint quotes only selected portions. Id. It may also consider material properly subject to judicial notice without converting the motion into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

## III.   DISCUSSION

Plaintiffs enumerate four claims for relief by alleging the Federal Defendants' grant of the Permit and associated environmental reviews violated (1) NEPA, (2) ESA, (3) MBTA, and (4) the Eagle Act. (*Compl.* ¶ 2, 31.) Courts now agree that litigants seeking judicial review of alleged noncompliance with NEPA must rest their causes of action on the APA. *See Sisseton-Wahpeton Oyate v. U.S. Dept. of State*, 659 F. Supp. 2d 1071 (D.S.D. 2009); *NRDC*, 658 F. Supp. 2d 105; *Central Delta Water Agency v. U.S. Fish and Wildlife Service*, 653 F. Supp. 2d 1066 (E.D. Cal. 2009). Further, the parties agree that if the Court has jurisdiction over any of Plaintiffs' claims, it must be via the APA.[3] Defendants' argue two alternative grounds for

---

[3] Defendants argue that "[P]laintiffs' claims are only viable to the extent their Complaint challenges final agency action subject to judicial review under the APA." (*Mot. Dismiss* [Doc. 10-1] 10:9-11.) Plaintiffs agree that jurisdiction hinges on the applicability of the APA to their claims in numerous portions of their opposition, including the statement that this Court "has jurisdiction under the APA because Plaintiffs' claims for relief 'identify some [particular] agency action' and 'the agency action in question [is a] final agency action.'" (*Opp'n* [Doc. 21] 9:10-13) (*citing Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 882 (1990); 5 U.S.C. § 704).

dismissal of Plaintiffs' Complaint with respect to the APA: (1) the APA does not apply to Plaintiffs claims because DOE's issuance of the Permit was Presidential action not final agency action, and (2) DOE's issuance of the Permit was committed to agency discretion by law and is therefore exempt from judicial review pursuant to the APA. (*Mot. Dismiss* 10: 13-22, 17:8-13.)

### A. Applicability of the APA to Plaintiffs' NEPA Claims
#### 1. APA Framework

"The APA sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992); *see also* 5 U.S.C. § § 701-6. Specifically, the APA provides for judicial review where a party suffers a "legal wrong because of agency action" or is "adversely aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. However, agency action is not subject to judicial review under the APA unless the challenged decision represents "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Furthermore, the APA does not apply to the extent that "statutes preclude judicial review" or "agency action is committed to agency discretion by law." 5 U.S.C. § 702(a). "Typically, a litigant will contest an action (or failure to act) by an agency on the ground that the agency has neglected to follow the statutory directives of Congress." *Webster v. Doe*, 486 U.S. 592, 599 (1988). Courts should "hold unlawful and set aside agency action" considered "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" or "without observance of procedure required by law."  5 U.S.C. § 706(2)(A); 5 U.S.C. § 706(2)(D).

As an initial matter, it is worth establishing exactly which acts and omissions of Defendants Plaintiffs allege to be subject to APA review. Plaintiffs claim that DOE's granting of the Permit based on an inadequate EIS violated NEPA and its implementing regulations. (*Compl.* ¶ 33.) Thus, when the DOE approved the Permit, it did so without complying with NEPA, and therefore violated the APA, 5 U.S.C. § 702(2)(A), (D).

//
//

### 2. Issuance of the Permit as Presidential Action

Defendants first argue that "the Complaint has challenged Presidential action undertaken by the agency pursuant to an express delegation of executive authority, which is not 'final agency action' subject to APA review." (*Mot. Dismiss* 10.)  Plaintiffs oppose, and argue that not only does the issuance of the Permit constitute "final agency action" reviewable under the APA, but so does the issuance of NEPA documents.  (*Opp'n* 10,11.)

Contrary to Defendants' argument, a review of the purpose and structure of NEPA demonstrates that judicial review of DOE's actions in this case is appropriate.  NEPA was designed to "promote environmentally sensitive decision-making without prescribing any substantive standards," *Anderson v. Evans*, 314 F.3d 1006, 1016 (9th Cir. 2002), and "guarantees that the relevant information will be made available to the larger audience that may also play a role in both the decisionmaking process and the implementation of that decision." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989). This audience includes the public, as well as "the President, who is responsible for the agency's policy, and Congress, which has authorized the agency's actions." *Sierra Club v. Watkins*, 808 F.Supp. 852, 858 (D.D.C. 1991) (citing *Nat'l Res. Def. Council, Inc. v. Morton*, 458 F.2d 827, 833 (D.C. Cir. 1972)); *see Grand Council of the Crees v. FERC*, 198 F.3d 950, 959 (D.C. Cir. 2000) (congressional purpose to ensure agency access to detailed environmental impact information and to inform the public of environmental concerns). Such information is critical for decision-makers who must "decide whether they will support or overrule the agency's action ...." *Watkins*, 808 F.Supp. at 858; *see Monroe County Conservation Council, Inc. v. Volpe*, 472 F.2d 693, 697 (2d Cir.1972) (NEPA requires full disclosure for decision-makers and the public).

The heart of NEPA is its "action-forcing" procedures, which ensure that broad policy concerns regarding environmental quality are infused into the actions of the federal government. *Robertson*, 490 U.S. at 349, 109 S.Ct. 1835 (citing 115 Cong. Rec. 40416 (Dec. 20, 1969) (remarks of Sen. Jackson); S. Rep. No. 91–296, at 19 (1969)).  The most important of these procedures is the requirement that an EIS be prepared whenever a proposed major federal action will significantly affect the quality of the human environment. *Sierra Club v. Peterson*, 717 F.2d

1409, 1413 (D.C. Cir.1983).

By their design, these "action-forcing" requirements are "almost certain to affect the agency's substantive decision, [but] it is now well settled that NEPA itself does not mandate particular results ...." *Robertson*, 490 U.S. at 350; *see Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 558 (1978) (describing the requirements of NEPA as "essentially procedural"); *Strycker's Bay Neighborhood Council, Inc. v. Karlen*, 444 U.S. 223, 227 (1980) (rejecting claim that NEPA demands that an agency elevate environmental concerns over other considerations); *North Slope Borough v. Andrus*, 642 F.2d 589, 599 (D.C.Cir.1980) (NEPA requirements are essentially procedural and a court should not substitute its own policy judgment for that of the agency). "NEPA merely prohibits uninformed—rather than unwise—agency action." *Robertson*, 490 U.S. at 351.  Compliance with the procedural requirements themselves, however, is not discretionary and a court may review the decision to forego production of an EIS. *Kleppe v. Sierra Club*, 427 U.S. 390, 420 (1976); *see Nat'l Audubon Society v. Hoffman*, 132 F.3d 7, 12 (2d. Cir. 1997) ("[B]ecause NEPA provides a procedural framework ... courts are responsible for ensuring that agencies comply with the statutory duty imposed on them by Congress.").  An agency has broad discretion in making such determinations and the decision is reviewable only if it was arbitrary, capricious, or an abuse of discretion. *Sierra Club v. United States Dep't of Transp.*, 753 F.2d 120, 126 (D.C.Cir.1985) (citing *Cabinet Mountains Wilderness / Scotchman's Peak Grizzly Bears v. Peterson*, 685 F.2d 678, 681 (D.C.Cir.1982)). While deferential, a court must thoroughly review an agency's decision and may not "rubber stamp" decisions that are inconsistent with statutory mandate or congressional policy. *Ariz. Cattle Growers Ass'n v. United States Fish & Wildlife*, 273 F.3d 1229, 1236 (9th Cir.2001).  In light of the foregoing, it is clear that this Court has been tasked to review agency actions such as the issuance of a Presidential permit by an agency, based on its own EIS that was created to comply with NEPA.

Defendants rely on *NRDC* and *Sisseton-Wahpeton Oyate*, two district court cases outside the Ninth Circuit.  Both of these district courts, in similar circumstances as those present here, held that issuance of a permit by a federal agency pursuant to an executive order is Presidential

action, not agency action, and therefore not subject to judicial review under the APA. *NRDC*, 658 F. Supp. 2d at 109-13; *Sisseton-Wahpeton Oyate*, 659 F. Supp. 2d at 1081-82. This line of cases has been called into question.

In *Sierra Club v. Clinton*, the district court declined to follow the *NRDC* and *Sisseton-Wahpeton Oyate* line of cases, noting that it did not agree with their reasoning "insofar as they hold that any action taken by the State Department pursuant to an executive order, and in particular the preparation of an EIS for a major federal action, is not subject to judicial review under the APA." 689 F. Supp. 2d 1147, 1157 n. 3 (D. Minn. 2010). In addition, a court in this district explained that "[a]n agency's decision not to prepare an EIS under NEPA is a final administrative decision reviewable under the [APA]." *Border Power Plant Working Group v. U.S. Dep't of Energy*, 260 F.Supp.2d 997, 1018 (S.D. Cal. 2003). Other courts have taken a similar position on the issue. *See Central Delta Water Agency v. U.S. Fish and Wildlife Service*, 653 F. Supp. 2d 1066, 1091 (E.D. Ca. 2009). The Court is not bound by any of these cases, but finds the reasoning in *Sierra Club* persuasive, especially in light of the fact that an agency could theoretically shield itself from judicial review under the APA for any action by arguing that it was "Presidential," no matter how far removed from the decision the President actually was.

In light of the foregoing, the Court finds that Defendants have failed to meet their burden and **DENIES** their motion to dismiss with respect to the "Presidential action" argument.

### 3. Exemption from APA Liability

Defendants next argue that even if the Court were to reject their presidential action argument, the Defendants' actions were otherwise exempt from the APA. (*Mot. Dismiss* 17.) Plaintiffs oppose. (*Opp'n* 19.) The Court finds that Defendants have not shown they are entitled to an APA exemption.

In general, there is a "strong presumption that Congress intends judicial review of administrative action." *Helgeson v. Bureau of Indian Affairs*, 153 F.3d 1000, 1003 (9th Cir.1998) (quoting *Traynor v. Turnage*, 485 U.S. 535, 542 (1988)); *see also Abbott Laboratories v. Gardner*, 387 U.S. 136, 140-41 (1967) ("[T]he Administrative Procedure Act ... embodies the

basic presumption of judicial review.... [O]nly upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review."), abrogated on other grounds by *Califano v. Sanders*, 430 U.S. 99 (1977); *ANA Int'l, Inc. v. Way*, 393 F.3d 886, 890 (9th Cir.2004) ("The default rule is that agency actions are reviewable ... even if no statute specifically authorizes judicial review"). This presumption is overcome only in two narrow circumstances. The first, which is not at issue here[4], is when Congress expressly bars review by statute. *See* 5 U.S.C. § 701(a)(1); *Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 44 (1991) (review may be precluded when there is "clear and convincing evidence of ... legislative intent" to bar judicial review) (internal quotation marks omitted). The second applies in "those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply," *Webster v. Doe*, 486 U.S. 592, 599 (1988) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (internal quotation marks omitted)), thereby leaving the court with "no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985); *see* 5 U.S.C. § 701(a)(2).

In determining whether judicial review is precluded on § 701(a)(2) grounds, we consider "the language of the statute and whether the general purposes of the statute would be endangered by judicial review." *Cnty. of Esmeralda v. Dep't of Energy*, 925 F.2d 1216, 1218 (9th Cir.1991) (citing *Webster v. Doe*, 486 U.S. 592, 599–601 (1988)). We may also look to "regulations, established agency policies, or judicial decisions" for a meaningful standard to review. *Mendez–Gutierrez v. Ashcroft*, 340 F.3d 865, 868 (9th Cir.2003). Therefore, "the mere fact that a statute contains discretionary language does not make agency action unreviewable." *Beno v. Shalala*, 30 F.3d 1057, 1066 (9th Cir.1994).

First, it is clear that judicial review of the issuance of the permit here does not "endanger" the general purposes of the statute, but instead supports them. Congress created NEPA "to

---

[4] Defendants fail to specifically cite the Ninth Circuit's rule regarding exemption of agency action under the APA. However, they appear only to be arguing the "no law to apply" exemption. (*See Mot. Dismiss* 18:18-24.) They present no express Congressional authority that bars review of the agency decision here.

protect the environment by requiring that federal agencies carefully weigh environmental considerations and consider potential alternatives to the proposed action before the government launches any major federal action." *Barnes v. U.S. Dep't of Transp.*, 655 F.3d 1124, 1131 (9th Cir.2011) (internal quotation marks omitted). Indeed, the Council on Environmental Quality has explicitly mandated that "[t]he President, the federal agencies, *and the courts* share responsibility for enforcing [NEPA] so as to achieve the [Act's goals]." 40 C.F.R. § 1500.1. Therefore, it cannot be argued "that the general purposes of the statute would be endangered by judicial review." *See Cnty. of Esmeralda*, 925 F.2d at 1218.

Second, Defendants have failed to meet their burden of establishing that "no meaningful standard against which to judge the agency's exercise of discretion" exists. The Court so holds in light of the statutory, regulatory, and decisional framework provided by APA, NEPA, relevant regulations, and controlling case law. A portion of this framework was outlined by the court in *Border Power Plant*:

> Under the APA, the Court must decide whether the decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Under this standard, courts must "carefully review the record to ensure that agency decisions are founded on a reasoned evaluation of the relevant factors." The Court must be satisfied that the agency took a "hard look" at the potential environmental impacts of the proposed action. . . If the decision of the agency is "well informed and well considered," the Court must defer to the agency's decision.

260 F. Supp. 2d at 1018 (citations omitted). In addition to these rules for judicial review, there are numerous statutes and regulations with which the DOE must comply when formulating an EIS. *E.g.*, 42 U.S.C. § 4332(2)(C)(iii)(an EIS shall include "a detailed statement [on] alternatives to the proposed action"); 40 C.F.R. § 1502.1 (an EIS must "inform decisionmakers and the public of the reasonable alternatives which would avoid or minimize adverse impacts or enhance the quality of the human environment"); 40 C.F.R. §1502.13 ("The [EIS] shall briefly specify the underlying *purpose and need* to which the agency is responding in proposing the alternatives including the proposed action."). In light of the above authority, it appears that this Court has a number of standards "against which to judge the [DOE's] exercise of discretion."

Defendants' citation to *Pinnacle Armor, Inc. v. United States* is unavailing. 648 F.3d 708 (9th Cir. 2011). In that case, the Ninth Circuit declined to exempt agency action from judicial

oversight under the APA. *Id.* at 718. Indeed, the court explained that it was "rare" to find "want of a meaningful standard." *Id.* at 721. The court proceeded to list some of these "rare" instances where judicial review was found to be precluded on this ground, none of which apply to the instant case. *Id.*

*Jensen v. National Marine Fisheries Service* is equally unhelpful to Defendants' position. 512 F.2d 1189 (9th Cir. 1975). In *Jensen*, Plaintiffs alleged, *inter alia*, that the Secretary of State violated the APA by approving a fishing regulation. *Id.* at 1191. With respect to the challenged regulation, the Halibut Commission had the authority to enact regulations with the approval of the United States President and the Governor General of Canada. *Id.* The power of the President to approve these regulations was delegated to the Secretary of State by Executive Order No. 11467. *Id.* The regulation at issue was approved by the Secretary. *Id.*

The *Jensen* Court concluded that the "[f]or purposes of this appeal the Secretary's actions are those of the President, and therefore by the terms of the APA the approval of the regulation at issue here is not reviewable." *Id*. The Court explained that "presidential action in the field of foreign affairs is committed to presidential discretion by law," so it follows that the Secretary's approval of the regulation could not be challenged. *Id.* The Ninth Circuit then concluded that Plaintiffs could not establish justiciability under Article III. *Id.* First, Article III standing is not challenged in the present case. Second, Plaintiffs do not challenge the Secretary of State's approval of a regulation. Third, and perhaps most importantly, this case has nothing to do with the Ninth Circuit's explicit requirements for exemption from judicial review. Therefore, the Court finds that the case is inapplicable, especially with respect to Defendants' exemption from judicial review argument.

In light of the foregoing, the Court finds that Defendants have failed to meet their burden and **DENIES** their motion to dismiss with respect to their exemption argument.

### B.   Sufficiency of Plaintiffs' Claims

Defendants further contend that even if the Court has jurisdiction over Plaintiffs' claims, Plaintiffs' ESA, MBTA, and Eagle Act claims should be dismissed for failure to state a claim for

which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (*Mot. Dismiss,* 3: 25-28, 4:1-8.) The Court addresses each of Plaintiffs' claims in turn below.

### 1. Plaintiffs State a Claim Under the ESA

Defendants argue that Plaintiffs' claim under ESA against the FWS should be dismissed because "[c]ontrary to Plaintiffs' assertion, FWS never issued or concurred in a "not likely to adversely affect" determination because DOE determined that the proposed project would have "no effect" on any listed species or designated critical habitat." (*Mot. Dismiss* 20.) However, this line of argument relies on the Court interpreting evidence outside the Complaint. Although the Court may consider such evidence in certain circumstances, Defendants provide no argument as to why the Court should consider this evidence here. Moreover, Plaintiffs object to the consideration of this evidence as outside the scope of a motion to dismiss. (*Opp'n* 22-23.) The Court agrees, and **DENIES** Defendants' motion to dismiss as it relies on material outside the Complaint. *See Hal Roach Studios,* 896 F.2d at 1555 n.19.

### 2. Plaintiffs Fail to State a Claim Under the MBTA

Defendants next argue that the Plaintiffs' MBTA claims fail because it "does not require DOE to obtain an incidental take permit before issuance of a Presidential permit." (*Mot. Dismiss* 23.) The Court agrees.

Plaintiffs fail to show that a permit is required under the MBTA for an unintentional, third party killing of migratory birds incident to construction of a project which was sanctioned by Presidential permit. Many courts have found, under similar circumstances, that such a requirement is not imposed by the MBTA. *Seattle Audubon Soc'y v. Evans*, 952 F.2d 297, 303 (9th Cir.1992); *Protect our Communities Foundation v. Salazar*, 12CV2211-GPC (PCL), 2013 WL 5947137 (S.D. Cal. Nov. 6, 2013); *U.S. v. Brigham Oil and Gas, LP*, 840 F. Supp. 2d 1202 (D.N.D. 2012) (citing *Seattle Audubon Soc'y*, 952 F.2d at 303). Therefore, the Court **GRANTS** Defendants' motion to dismiss with respect to Plaintiffs' MBTA claims **WITH LEAVE TO AMEND**.

### 3. Plaintiffs Fail to State a Claim Under the Eagle Act

Defendants' motion to dismiss Plaintiffs' Eagle Act claims is essentially identical to its

motion with respect to the MBTA.  (*Mot. Dismiss* 24-25.)  Plaintiffs opposition is also nearly identical.  (*Opp'n* 24-25.)  The Court finds that for the reasons outlined above, the Plaintiffs' Eagle Act claims fail for the same reasons that their MBTA claims fail.  Therefore, the Court **GRANTS** Defendants' motion to dismiss with respect to Plaintiffs' Eagle Act claims **WITH LEAVE TO AMEND.**[5]

### IV.  CONCLUSION

Based on the foregoing, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**, as follows:

    1.  Defendants' motion to dismiss is **DENIED** with respect to Plaintiffs' First and Second Causes of Action.

    2.  Defendants' motion to dismiss is **GRANTED** with respect to Plaintiffs' Third and Fourth Causes of Action **WITH LEAVE TO AMEND.**

**IT IS SO ORDERED.**

DATED: March 27, 2014

_____
M. James Lorenz
United States District Court Judge

---

[5] The Court's reasoning and dismissal of Plaintiffs' MBTA and Eagle Act claims, of course, does not address whether or not Plaintiffs may seek to enforce the MBTA and Eagle Act against the parties that will directly kill or take species in alleged violation of these Acts, and pursuant to the Permit.