1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9        SOUTHERN DISTRICT OF CALIFORNIA
10

11  BACKCOUNTRY AGAINST DUMPS,          Case No.:  3:12-cv-03062-L-JLB
    et al.,
12                                      **ORDER GRANTING**
                            Plaintiffs,  **PLAINTIFFS' MOTION FOR**
13                                      **SUMMARY JUDGMENT [Doc.**
    v.                                  **106] AND DENYING**
14                                      **DEFENDANTS' CROSS MOTION**
    UNITED STATES DEPARTMENT OF         **FOR SUMMARY JUDGMENT**
15  ENERGY, et al.,                     **[Doc. 107].**
16                          Defendants.
17

18
19        Pending before this Court are the parties' cross-motions for summary judgment.
20  The Court decides the matter on the papers submitted and without oral argument.  See
21  Civ. L. R. 7.1(d)(1).  For the reasons stated below, the Court **GRANTS** Plaintiffs' Cross
22  Motion for Summary Judgment and **DENIES** Defendants' Cross Motion for Summary
23  Judgment.
24  //
25  //
26  //
27  //
28  //

1  **I.    BACKGROUND**

2        On August 17, 2012, the Department of Energy ("DOE") announced its decision to

3  issue a presidential permit to Energia Sierra Juarez U.S. Transmission, LLC ("ESJ"), a

4  subsidiary of Sempra Energy. The permit, PP-334, allowed ESJ "to construct, operate,

5  maintain, and connect a double-circuit 230,000-volt (230-kV) electric transmission line

6  across the U.S.-Mexico border in eastern San Diego Country, California." 77 Fed. Reg.

7  49789-01.  The envisioned transmission line would run approximately 1.65 miles from

8  the vicinity of La Rumorosa, Northern Baja California, Mexico to a spot near Jacumba,

9  California. Roughly .65 miles of the transmission line would be within the U.S.

10  The terminus in Mexico was ESJ's planned wind turbine facility, capable of generating

11  1,250 Megawatts (MW) of electricity.  The end point in Jacumba was San Diego Gas &

12  Electric's planned ECO Substation, which would then be connected with the 500-kV

13  Southwest Powerlink transmission line.[1] The intended result of the Project was to allow

14  electricity generated by the ESJ Wind Farm to be delivered into the U.S. power grid.

15  Construction of the Project is now complete.

16        DOE-issued Presidential permits are required before electricity transmission

17  facilities may be constructed, operated, maintained, or connected at the U.S. Border.

18  DOE is responsible for receiving and reviewing applications and issuing permits.

19  Presidential Permit 334 ("PP-334") was issued to ESJ following a review process that

20  included an examination of the impacts of the Project as directed by the National

21  Environmental Policy Act ("NEPA").

22        On April 21, 2014, Plaintiffs Backcountry Against Dumps and Donna Tisdale

23  (collectively "Plaintiffs")[2] filed an Amended Complaint alleging several environmental

24

25  _____

26  [1] As used in this Order, "ESJ Wind Farm" refers to the wind turbine facility in Mexico; "U.S. Line" refers to the .65 mile stretch of power line between the ECO Substation and the border; "Mexico Line"

27  refers to the one mile stretch of power line between the border and the ESJ Wind Farm; the "Project" refers to the aggregate of the U.S. Line, the Mexico Line, and the ESJ Wind Farm.

28  [2] The Protect Our Communities Foundation is no longer a party to this action.  (See Doc. 66.)

claims against the United States, a number of its agents in their official capacities, and ESJ. (See FAC [Doc. 45].) In its September 29, 2015 Order (Cross MSJ1 Order [Doc. 87]) the Court granted summary judgment to Defendants on all but Plaintiffs' first count, alleging violation of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq. (See Cross MSJ1 Order.) As to the NEPA claim, the Court (1) granted summary judgment to Plaintiffs on the issues of whether the Purpose and Need Statement of the Final Environmental Impact Statement issued in connection with PP-334 ("FEIS") was overly narrow; (2) granted summary judgment to Defendants on the issue of whether the FEIS was adequate as to the ESJ Wind Farm's environmental impacts upon Mexico; (3) granted summary judgment to Defendants on the issue of whether the FEIS was adequate as to environmental impacts within the United States; and (4) denied both parties' cross motions for summary judgment on the issue of whether the FEIS was adequate as to the environmental impacts of the transmission lines upon Mexico. (See Id.) The Court subsequently denied both parties' motions for reconsideration / clarification but granted the parties leave to file a second round of cross motions for summary judgment on the issue of the sufficiency of the FEIS as to environmental impacts upon Mexico. (See June 9, 2016 Order [Doc. 104].)

## II.   LEGAL STANDARD

Challenges under NEPA are governed by the Administrative Procedures Act ("APA"). *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014); *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1205-06 (9th Cir. 2004); 5 U.S.C. § 702. Under the APA, a court should only overturn an agency action when it finds the action to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law…[or] without observance of procedure required by law[.]" 5 U.S.C. § 706(2)(A), (D). This standard of review is highly deferential to the agency and the reviewing court "is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971) *overruled in*

*part on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977); *Independent Acceptance Co. v. California*, 204 F.3d 1247, 1251 (9th Cir. 2000). Courts should be at their most deferential when reviewing scientific or technical judgments within the agency's field of expertise. *Conservation Congress v. Finley*, 774 F.3d 611, 617 (9th Cir. 2014). However, courts "must not 'rubber stamp'… [agency actions which are] inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." *Ocean Advocates v. U.S. Army Corps of Engineers*, 402 F.3d 846, 859 (9th Cir. 2004) (internal quotation and citation omitted). Review of an agency decision is generally limited to the administrative record used by the agency in making the challenged decision. *Fence Creek Cattle Co. v. U.S. Forest Service*, 602 F.3d 1125, 1131 (9th Cir. 2010).

Summary judgment is an appropriate remedy "when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Conservation Congress*, 774 F.3d at 617 (citing *Karuk Tribe of Cal. V. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012) (*en banc*). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

3:12-cv-03062-L-JLB

"[T]he district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (*citing Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elect. Indus. Co., Ltd. v Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ P. 56(e)).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its merits." *Fair Hous. Council of Riverside Cnty, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal quotes and citations omitted). Thus, "the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Id.* (quoting Wright, et al., Federal Practice and Procedure § 2720, at 335-36 (3d ed. 1998)). If, however, the cross-motions are before the court at the same

1   time, the court is obliged to consider the evidence proffered by both sets of motions

2   before ruling on either one.  *Id.* at 1134.

4   **III.  DISCUSSION**

5        Defendants contend that the issuance of PP-334 did not trigger a duty under NEPA

6   to consider impacts in Mexico stemming from portions of the Project located on Mexican

7   soil.  Rather, Defendants argue that (1) the only action authorized by PP-334 was the

8   construction and operation of the Project that stands on U.S. soil: the .65 mile stretch of

9   power line running from the U.S. / Mexico border to the ECO Substation in Jacumba; (2)

10  the remaining one mile of the power line running between the border and the ESJ Wind

11  Farm was permitted and is regulated by the government of Mexico; and (3) the U.S. lacks

12  jurisdiction to regulate any of the Project's structures that stand on Mexican soil.  These

13  premises are entirely true, but they do not compel the conclusion Defendants urge.

14       Under NEPA, DOE had a duty to prepare an environmental impact statement

15  ("EIS") stemming from the action authorized by PP-334.  See 42 U.S.C. § 4332(C).  The

16  action authorized by PP-334 was the construction of the U.S. portion of the Line and the

17  connection of it to the Mexican portion of the Line.  77 Fed. Reg. 49789-01.  NEPA

18  required that DOE consider both the direct and indirect effects of this action.  40 C.F.R. §

19  1508.8.  An environmental impact is an "indirect effect" of an action if it is reasonably

20  foreseeable that the action would cause the impact.  40 C.F.R. § 1508.8 (b).  A mere "but

21  for" causal relationship between the action and the impact does not suffice.  *Dep. of*

22  *Transp. v. Public Citizen* , 541 U.S. 752, 767 (9th Cir. 2004).  Rather, the connection

23  must be something more akin to the concept of proximate causation, or "two links of a

24  single chain."  *Id.*; *Sylvester v. U.S. Army Corps of Engineers*, 884 F.2d 394, 400 (9th

25  Cir. 1989).

26       Here, there is a very strong causal link between PP-334 and the Mexican portion of

27  the Line.  The U.S. portion of the Line and the Mexican portion of the Line are literally

28  "two links of a single chain" connecting the Substation to the ESJ Wind Farm.  There

simply can be no dispute that it was "reasonably foreseeable" that the approval of PP-334 would trigger the construction and operation of the Mexican portion of the line and all environmental impacts stemming therefrom.  In this vein, *Border Power Plant Working Group v. Dept. of Energy*, 260 F. Supp. 2d 997 (S.D. Cal. 2003) is on all fours.

In *Border Power Plant*, DOE issued presidential permits authorizing the construction of a power line that ran from a substation in Imperial County, CA to the border, where it tied to another line linked to a power plant in Mexicali, Mexico that would generate power for U.S. consumption.  *Id.* at 1007.  The court reasoned that "because the [Mexican power plant] and the [DOE permitted transmission line] are two links in the same chain, the emissions resulting from the operation of the [Mexican power plant] are "effects of the [DOE permitted transmission line] that must be analyzed under NEPA."  *Id.* at 1017.  If a U.S. transmission line and a Mexican power plant are "two links of the same chain", it follows that that the Mexican transmission Line connecting the two is also a part of the single chain as it directly connects the other two links.

Defendants argue that the court in *Border Power Plant* restricted its holding to the environmental impacts that the power plant would have upon the United States, leaving outside of the scope of NEPA the environmental impacts the power plant would have upon Mexico.  ([Doc. 83] 5:14–26; [Doc. 84] 5:7 n.3.)  The Court does not read *Border Power Plant* so narrowly.  For one, none of the language in *Border Power Plant* seems to thus limit the scope of its holding.  But more important to the present decision is the fact that such a limitation would conflict with this Court's holding that NEPA requires the government to consider extraterritorial effects stemming from PP-334's approval of the construction and operation of the U.S. Line.  These PP-334 actions proximately caused the Mexican Line and the ESJ Wind Farm.  Put differently, the Mexican Line and the ESJ Wind Farm (and all associated environmental impacts) are indirect effects of the U.S. Line.  NEPA requires the government to consider the extraterritorial effects stemming from major federal actions (such as the construction and operation of the U.S. Line) undertaken on U.S. soil.  *See* 42 U.S.C. 4332 (F); CEQ Guidance; 40 C.F.R. § 1508.8;

*Government of the Province of Manitoba v. Salazar*, 691 F. Supp. 2d. 37, 51 (D.D.C. 2010).

Defendants are correct to argue that such a holding is inconsistent with the Court's previous ruling that DOE did not have a duty to consider the environmental effects of the ESJ Wind Farm. (See Cross MSJ1 Order 16:16–18:14.) Accordingly, pursuant to Federal Rule of Civil Procedure 54(b), the Court modifies its previous order and holds that DOE had an obligation under NEPA to consider the environmental impacts upon Mexico stemming from (1) the U.S. portion of the Line, (2) the Mexico portion of the Line, and (3) the ESJ Wind Farm.

To establish that the FEIS is deficient under NEPA for failure to consider extraterritorial environmental impacts stemming from the U.S. Line, Plaintiffs must also show (1) that the U.S. Line caused adverse environmental impacts in Mexico that the FEIS failed to consider; (2) Plaintiffs put DOE on notice of these impacts during the review process; and (3) the impacts have not been rendered moot by the completed construction of the project. See *Dep't of Transp. v. Public Citizen*, 541 U.S. 752, 764 (9th Cir. 2004) (NEPA Plaintiff must exhaust administrative remedies during review process); *Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir. 2008) (explaining the mootness doctrine in the NEPA context).

As explained above, the U.S. Line's construction and operation is a proximate cause of the construction and operation of the Mexico Line and ESJ Wind Farm and any associated environmental impacts. That the construction and operation of the Mexico Line and ESJ Wind Farm would cause various significant adverse environmental impacts in Mexico is beyond dispute. Further, Plaintiffs submitted a number of comments regarding the alleged insufficiency of the Draft Environmental Impact Statement ("DEIS"). Of relevance to the present issue, Plaintiffs stated "the DEIS fails to adequately analyze numerous environmental impacts as described below. Furthermore, the DEIS does not consider any of the Project's environmental impacts in Mexico, as NEPA requires. DOE must correct these failures and omissions." AR 013880.

Defendants acknowledged these comments, claiming that "[i]mpacts that occur within Mexico are outside the scope of the NEPA analysis."  AR 013880.  Given this exchange in the DEIS commentary process[3], Defendants assertion that Plaintiffs did not adequately put DOE on notice that the DEIS failed to consider adverse environmental impacts upon Mexico rings hollow.

Nor can it be said that the extraterritorial effects are moot by virtue of the completed construction of the project.  A case is not moot where a court can grant effective relief.  *Feldman*, 518 F.3d at 642.  Defendants themselves recognize that this Court can order them to disconnect the U.S. Line.  (See [Doc. 112] 8:11 n.8.)  By ordering the disconnection of the line, the Court could, at least to some extent, remedy adverse environmental impacts in Mexico stemming from the *operation* of the Project, e.g., noise, fire ignition risks, and maintenance vehicle traffic.

//
//
//
//
//
//
//
//
//
//
//
//
//

[3] See also AR 006990 (Letter from Plaintiffs to DOE explaining that DOE needs to consider numerous environmental impacts in Mexico).

3:12-cv-03062-L-JLB

1  **IV.    CONCLUSION & ORDER**

2          For the foregoing reasons, the Court reconsiders its previous order, **GRANTS**

3  Plaintiffs Cross Motion for Summary Judgment and **DENIES** Defendants' Cross Motion

4  for Summary Judgment as follows:

5       • Defendant had a duty to consider the environmental impacts upon Mexico

6          stemming from all portions (the U.S. Line, the Mexico Line, and the ESJ Wind

7          Farm) of the Project.

8       • By not considering such impacts in the FEIS, Defendants violated NEPA.

9       •  This order does not decide the issue of remedy.  The parties are instructed to

10         contact the undersigned's law clerk at (619) 557-7669 no later than February 10,

11         2017 to discuss a briefing schedule on the issue of remedy.

12

13  Dated:  January 30, 2017

14

15  _____
    Hon. M. James Lorenz
16  United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

3:12-cv-03062-L-JLB